UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 17-CV-61469-SCOLA
MAGISTRATE JUDGE REID

RODNEY MICHEL,

Petitioner,

v.

MARK S. INCH,[1]

Respondent.
_____/

## REPORT OF MAGISTRATE JUDGE

### I. Introduction

The *pro se* petitioner, **Rodney Michel**, has filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his conviction and sentence, entered following a jury trial in the Seventeenth Judicial Circuit, Broward County, Case No. 08-010474CF10A.

This Cause has been referred to the undersigned for consideration and report, pursuant to 28 U.S.C. § 636(b)(1)(B), (c); S.D. Fla. Local Rule 1(f) governing Magistrate Judges; S.D. Fla. Admin. Order 2019-02; and the Rules Governing

---

1 Julie L. Jones is no longer the Secretary of the Department of Corrections.  Mark S. Inch is now the proper respondent in this proceeding.  Inch should, therefore, "automatically" be substituted as a party under Federal Rules of Civil Procedure 25(d)(1). The Clerk is directed to docket and change the designation of the Respondent.

1

Habeas Corpus Petitions in the United States District Courts.

For its consideration of the petition (DE#1), the court has received the state's response to this court's order to show cause, along with its supporting appendices (DE#s10,11), containing copies of relevant state court records.

Construing the arguments liberally as afforded *pro se* litigants, pursuant to *Haines v. Kerner*, 404 U.S. 519 (1972), Petitioner raises the following grounds:

**Claim 1**: Ineffective assistance of counsel for failing to call or depose various state witnesses (DE#1:5);

**Claim 2**: Ineffective assistance of counsel for failing to investigate Petitioner's prior mental health history (DE#1:7);

**Claim 3**: The trial court erred in denying Petitioner's motion for new trial (DE#1:8);

**Claim 4**: Ineffective assistance of counsel for failing to call a DNA expert and request a *Frye* hearing to examine the reliability of the DNA procedure employed by the police department (DE#1:7);

After reviewing the pleadings, for the reasons stated in this Report, the Undersigned recommends that Petitioner's motion be denied because Petitioner is not entitled to relief on the merits.

## II.  Factual and Procedural History

### Charges

The state charged Petitioner with two counts of armed sexual battery in violation of Fla. Stat. § 794.011(3) (counts 1 & 2) and two counts of armed robbery in violation of Fla. Stat. § 812.13(1),(2)(a) (counts 3 & 4) (DE#11, Ex. 1). The

2

charges alleged the use, threatened use, or carrying of a deadly weapon, specifically, a firearm. (DE#11, Ex.1). The state filed notice that it was seeking to have Petitioner declared a habitual felony offender ("HFO"). (DE#11, Ex. 2). Petitioner proceeded to trial. (DE#11, Ex. 3, Trial Transcripts).

### The State's Case at Trial

The victims testified to the following at trial. Around 1:30 a.m. on April 9, 2008, Nicolae Comsa ("Comsa") called an escort company and hired L.S. (T. 196-97). Comsa stood out front when L.S. pulled her car into the driveway and noticed a man walking up the street. (T 199). He had seen this same individual about six times before, sometimes during the day. (T 200, 233). The man looked over when L.S. entered the house with Comsa. (T 200).

L.S. and Comsa sat down on the couch to talk. (*Id.*). Upon noticing the man previously walking up the street was outside looking through his window, Comsa opened the door and asked what he wanted. (T 201). The man had a gun and ordered Comsa back into the house. (T 201-02). Once inside, the man demanded money from Comsa and L.S. (T 202). He also ordered them to put their heads down, and they complied. (T 203). The man stole approximately $400 from L.S.'s purse. (T 286-87).

The man next directed L.S. to perform oral sex on him, which she did because she was in fear for her life. (T 287-89). He then asked her to get a condom from her

3

purse and place it on him. She followed his instructions. He then raped her. (T 288-290). Afterward, the man left the house, presumably with the condom. (T 209).

Comsa immediately called the police. (T 209-10). Both Comsa and L.S. gave the same description of the intruder, specifically, black male, approximately 6'1", with gold teeth. (T 226). Officers did not find any physical evidence or DNA in the home that would lead them to a suspect. (T 242-48). Officer Innocent Doles brought L.S. to the Sexual Assault Treatment Center. ("SATC"). (T 293-95). After waiting over an hour for the nurse, at approximately 5:00 a.m., L.S. insisted that she had to leave to get home to her son, who was with a babysitter. (*Id.*). She did not want her family to find out that she was an escort and what had happened to her, and was worried she would have to explain if she was gone much longer. (*Id.*).

Approximately two months later, Comsa saw Petitioner at a gas station a few blocks from Comsa's home and believed Petitioner was the man involved in the crime. (T 211-12). Comsa followed Petitioner for a few minutes, and then decided to contact the officer in charge of the investigation, Detective Gaunter. (T 214).

Detective Gaunter reviewed the surveillance video from the gas station, and eventually tracked down Petitioner. Comsa and L.S. identified Petitioner out of a photo array line-up. (T 217, 297-98). The state introduced the identification evidence at trial. (*Id.*). The state then rested.

**The Defense Case at Trial**

4

Defense counsel moved for a judgment of acquittal, arguing that the state presented insufficient evidence that an actual firearm was used. (T 318-19). The trial court denied the motion. (T 319).

Petitioner's parents testified to the following through a sworn interpreter at trial. (T 325, 338). Petitioner was 24 years old and living with his parents on the night in question. (T 329-30, 334-35). Everyone went to bed at 11:00 p.m. (T 330, 341). Petitioner's parents would have known if Petitioner had left the house because, had left during the night, the door would have been unlocked in the morning. (T 342).

Petitioner testified that he had lived with his parents in the area since 1987 and had never seen Comsa or L.S. (T 352). He always returned home by 11:00 pm and had never left in the middle of the night. (T 351). On cross-examination, he conceded that he had six felony convictions. (T 355). He also conceded that he lived one street away from Comsa, and Comsa, who was white, would have stood out in the predominantly black neighborhood. (T 355-56).

Defense counsel renewed the motion for judgment of acquittal, which the court denied. (T 360-61). The jury found Petitioner guilty as charged. (DE#11, Ex.4).

**<u>Motion for New Trial</u>**

In a motion for new trial, Petitioner argued that he did not receive a fair trial because the Creole interpreter did not accurately translate his parents' testimony.

5

(DE# 11, Ex.5, Post-Trial Hearing Transcript). The trial court conducted a hearing on the motion. (*Id.*). The court noted that defense counsel failed to bring this issue to the court's attention when the parents were testifying. (*Id.*). Defense counsel explained that after the trial, the parents informed counsel that the translator was not completely accurate. (*Id.*:6). The court denied the motion for new trial. (*Id.*:7).

### Verdict/Sentencing

On March 24, 2009, the trial court adjudicated Petitioner guilty and sentenced him to life in prison as a habitual offender (DE#11, Ex. 5, 6).

### Direct Appeal

Petitioner appealed to the Fourth District Court of Appeal ("Fourth DCA"). In his initial brief, Petitioner argued (1) the trial court erred in denying Petitioner's motion for new trial due to the lack of qualifications of an interpreter for defense alibi witnesses, (2) the trial court erred in denying Petitioner's motion for judgment of acquittal, and (3) the trial court erred in convicting Petitioner of armed robbery in light of the insufficient evidence that a firearm was used. (DE#11:Ex. 7). The Fourth DCA affirmed without written opinion in *Michel v. State*, 49 So. 3d 1281 (Fla. 4th DCA 2010). Mandate issued February 4, 2011.

### Rule 3.850 Post-Conviction Motion Proceedings

On December 6, 2012, Petitioner, through counsel, filed a Rule 3.850 motion for post-conviction relief in the trial court. (DE# 11, Ex. 9). Petitioner alleged

ineffective assistance of counsel for failing to seek to exclude the photo line-up and video surveillance evidence admitted at trial and failing to object to multiple instances of the prosecution improperly bolstering witness testimony. (*Id.*). The state filed a response. (DE# 11, Ex. 10). The trial court denied the motion for the reasons set forth in the state's response. (DE# 11, Ex. 11).

Petitioner appealed. The Fourth DCA *per curiam* affirmed without written opinion in *Michel v. State*, 163 So. 3d 1218 (Fla. 4th DCA 2015). (DE# 9, Ex. 32).  Mandate issued June 26, 2015. (DE# 11, Ex. 12).

### **Petition for Writ of Habeas Corpus**

On December 13, 2012, Petitioner filed a *pro se* petition for writ of habeas corpus in the Fourth DCA in which he alleged ineffective assistance of appellate counsel on direct appeal for (1) failing to file a motion to correct the consecutive sentencing error under Rule 3.800(b) and (2) failing to challenge the prosecutor's improper comments during closing. (DE# 11, Ex. 13). The state filed a response. (DE# 11, Ex. 14). On May 14, 2013, the Fourth DCA entered an order denying the petition on the merits. (DE# 11, Ex. 14) (*citing Williams v. State*, 125 So. 3d 879 (Fla. 4th DCA Apr. 24, 2013)).

Petitioner filed a *pro se* notice to invoke jurisdiction in the Florida Supreme Court. (DE# 11, Ex. 16). The state filed a response to the Florida Supreme Court's order to show cause. (DE# 11, Ex. 17, 18). In a May 5, 2016 order, the Florida

Supreme Court accepted jurisdiction and granted the petition for review. The order quashed the Fourth DCA's May 14, 2013 order and remanded for reconsideration based upon a sentencing issue not relevant to this proceeding.  (DE# 11, Ex. 19).

On remand, the Fourth DCA granted the petition and remanded to the trial court for resentencing. *Michael v. State*, 192 So.3d 618 (Fla. 4th DCA 2016). Mandate issued June 24, 2016. (DE# 11, Ex. 20).

On January 31, 2016, the trial court re-sentenced Petitioner to life in prison as an HFO on all four counts, with all counts to run concurrently. (DE# 11, Ex. 21, 22).

Petitioner filed a timely *pro se* notice of appeal from the sentencing order (DE# 11, Ex. 23). The Fourth DCA issued an April 26, 2017 order dismissing the appeal when Petitioner failed to pay the filing fee. (DE# 11, Ex. 26).

### 28 U.S.C. § 2254 Petition

Petitioner next came to this court filing the instant petition pursuant to § 2254. (DE# 1). The state filed a response to this court's order to show cause, with supporting exhibits. (DE# 10, 11). The state concedes the petition is timely, but argues that Petitioner did not properly exhaust all claims raised. (DE# 10:8-13).

### III.  Threshold Issues

### A. Exhaustion

The Respondent argues that **claims 1, 2,** and **4** are unexhausted and procedurally defaulted from federal habeas review. (DE#10:8-13). In addressing the

8

issue of exhaustion and procedural default, a court must determine whether the claim was raised in the state court proceedings; and if not, whether it was procedurally defaulted from review. The Respondent correctly points out that Petitioner raises these claims for the first time in the instant proceedings. (*Id.*). Petitioner does not expressly dispute that he failed to raise these claims in state court, but argues that he asked his post-conviction counsel to raise these claims in the Rule 3.850 motion and counsel declined to do so. (DE# 1:35).

Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging a state conviction. *See* 28 U.S.C. § 2254(b), (c). To properly exhaust state remedies, a petitioner must fairly present every issue raised in his or her federal petition to the state's highest court, either on direct appeal or on collateral review. *Preston v. Sec'y, Fla. Dep't of Corr's*, 785 F.3d 449, 456–59 (11th Cir. 2015).

Exhaustion is not satisfied if the petitioner merely presents the state court with "all the facts necessary to support the claim" or even if a "somewhat similar state-law claim was made." *Kelley v. Sec'y for Dept. of Corr's*, 377 F.3d 1317, 1344-45 (11th Cir. 2004)(citation omitted). A petitioner must instead "present his claims to the state courts such that they are permitted the 'opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim.'" *Id*.

To circumvent the exhaustion requirement, Petitioner must establish that there

is an "absence of available state corrective process" or that "circumstances exist that render such process ineffective to protect [her] rights." 28 U.S.C. § 2254(b)(1)(B); *Duckworth v. Serrano,* 454 U.S. 1, 3 (1981). The merits of the exhaustion argument shall be addressed in greater detail below. However, the Respondent correctly argues that Petitioner raises claims **1, 2,** and **4** for the first time in these proceedings.

In any event, when reviewing a federal habeas petition filed by a state prisoner, federal courts may "skip over the procedural bar issues" to deny on the merits. *See, e.g.*, *Loggins v. Thomas*, 654 F.3d 1204, 1215 (11th Cir. 2011). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104–132, 110 Stat. 1214 (1996), which governs a state prisoner's federal petition for habeas corpus, provides this court with authority to do so. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust [state remedies.]"). Furthermore, even before AEDPA's enactment, judicial economy sometimes warranted reaching the merits when they were "easily resolvable against the habeas petitioner." *See, e.g.*, *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).

Accordingly, this court need not resolve whether any procedural bars exist, because Petitioner clearly cannot prevail on the merits of claims 1, 2, and 4. *See Valle v. Sec'y, Fla. Dep't of Corr.*, 459 F.3d 1206, 1213 (11th Cir. 2006).

## IV. <u>Governing Legal Principles</u>

"The purpose of [the] AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." *Ledford*, 818 F.3d at 642 (*quoting Greene v. Fisher*, 565 U.S. 34, 38 (2011)). In fact, federal habeas corpus review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" *Ledford*, 818 F.3d at 642 (*quoting Hill v. Humphrey*, 662 F.3d 1335, 1343 (11th Cir. 2011)), and is generally limited to the record that was before the state court that adjudicated the claim on the merits. *See Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) .

The federal habeas court is first tasked with identifying the last state court decision, if any, that adjudicated the claim on the merits. *See Marshall v. Sec'y, Fla. Dep't of Corr.*, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court is not required to issue an opinion explaining its rationale, because even the summary rejection of a claim, without explanation, qualifies as an adjudication on the merits which warrants deference. *See Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008). *See also Wilson v. Sellers*, 138 S.Ct. 1188, 1192 (2018); *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558 (2018).

Where the claim was "adjudicated on the merits," in the state forum, §2254(d) prohibits relitigation of the claim unless the state court's decision was (1) "**contrary to**, or involved an unreasonable application of, clearly established Federal law,[2] as

---

[2]"Clearly established Federal law" consists of the governing legal principles, rather than

11

determined by the Supreme Court of the United States;" or, (2) "based on an **unreasonable determination** of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Harrington*, 562 U.S. at 97-98. *See also Williams v. Taylor*, 529 U.S. 362, 413 (2000). When relying on § 2254(d)(2), a federal court can grant relief if the state court rendered an **erroneous factual determination**. *Tharpe v. Warden*, 834 F.3d 1323, 1337 (11th Cir. 2016), *cert. den'd*, 137 S. Ct. 2298 (2017).

Because the "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court," *Burt v. Titlow*, 571 U.S. 12, 20 (2013), federal courts may "grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" *Tharpe*, 834 F.3d at 1338 (11th Cir. 2016) (*quoting Harrington*, 562 U.S. at 102). This standard is intentionally difficult to meet. *Harrington*, 562 U.S. at 102. As applied here, to the extent Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under § 2254(d).

Petitioner alleges **ineffective assistance of counsel**. (DE#1). The Sixth Amendment to the United States Constitution guarantees criminal defendants the

---

the dicta, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision. *White*, 572 U.S. at 419; *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (*citing Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

right to the assistance of counsel during criminal proceedings against them. *Strickland v. Washington*, 466 U.S. 668, 684–85 (1984). When assessing counsel's performance under *Strickland*, the court employs a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

To prevail on a claim of ineffective assistance of counsel, Petitioner must demonstrate that: (1) his or her counsel's **performance was deficient**, i.e., the performance fell below an objective standard of reasonableness; and, (2) he or she suffered **prejudice** as a result of that deficiency. *Strickland*, 466 U.S. at 687-88.

To establish **deficient performance**, Petitioner must show that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence. *Strickland, supra. See also Cummings v. Sec'y for Dep't of Corr.*, 588 F.3d 1331, 1356 (11th Cir. 2009). The review of counsel's performance should focus on "not what is possible or what is prudent or appropriate but only [on] what is constitutionally compelled." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (*en banc*) (*quoting Burger v. Kemp*, 483 U.S. 776 (1987)).

Regarding the **prejudice** component, the Supreme Court has explained "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

A court need not address both prongs of *Strickland* if the defendant makes an insufficient showing on one of the prongs. *Id.* at 697. Further, counsel is not ineffective for failing to raise non-meritorious issues. *Chandler*, 240 F.3d at 917. Nor is counsel required to present every non-frivolous argument. *Dell v. United States*, 710 F.3d 1267, 1282 (11th Cir. 2013).

Furthermore, a § 2254 Petitioner must provide factual support for his or her contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir.1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012).

## V. <u>Discussion</u>

**Claim 1**

Under claim 1, Petitioner alleges ineffective assistance of counsel for failing to call or depose all state witnesses who may have had information relevant to the charges. (DE# 1:5). The only specific witness identified by petitioner is "Officer Innocent Doles." (*Id.*). According to petitioner, Officer Doles brought L.S. to the Sexual Assault Treatment Center (SATC) at which point L.S. refused to be examined. (*Id.*). Petitioner asserts that Officer Doles's testimony "would [have] shown the contradiction between the victim testimony, the lack of evidence, and the credibility at trial." (*Id.*).

14

Federal habeas corpus petitioners asserting claims of ineffective assistance, based on counsel's failure to call a witness (either a lay witness or an expert witness), must satisfy the prejudice prong of *Strickland* by (1) naming the witness, (2) demonstrating the witness was available to testify and would have done so, (3) setting out the content of the witness's proposed testimony, and (4) showing the testimony would have been favorable to a particular defense. *Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010); *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). *See also Reed v. Sec'y, Fla. Dep't of Corr.*, 767 F.3d 1252, 1262 (11th Cir. 2014) (holding federal habeas petitioner who failed to show an uncalled witness was available to testify at the time of trial failed to satisfy prejudice prong of *Strickland*).

Moreover, "[w]hich witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that [courts] will seldom, if ever, second guess." *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995). Of course, a petitioner cannot maintain an ineffective assistance of counsel claim "simply by pointing to additional evidence that could have been presented." *Van Poyck v. Fla. Dep't of Corr.*, 290 F.3d 1318, 1324 (11th Cir. 2002).

Petitioner named one witness but did not demonstrate that the witness was available and/or willing to testify. Petitioner's contention that Officer Doles's testimony would have challenged L.S.'s credibility is conclusory. At trial, L.S. provided a reasonable explanation of why she insisted on leaving the SATC.

15

Specifically, her son was with a babysitter and she did not want her family to find out what had happened. As a result, Petitioner cannot establish that trial counsel's failure to call Officer Doles as a witness resulted in prejudice under *Strickland*.

**Claim 2**

Under claim 2, Petitioner alleges ineffective assistance of counsel for failing to investigate Petitioner's prior mental health history. (DE#1:7). Petitioner's sole assertion regarding his mental health is that on January 9, 2008, he was "Baker Acted" by authorities and sent to Broward General Hospital for bipolar disorder. He argues that had counsel presented his medical records to the jury, the outcome of trial would have been different. (*Id.*).

A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. *Id.* at 690-91. To uphold a lawyer's strategy, the Court need not attempt to divine the lawyer's mental processes underlying the strategy. "There are countless ways to provide effective assistance in any given case." *Strickland*, 466 U.S. at 689. No lawyer can be expected to have considered all of the ways. *Chandler*, 218 F.3d at 1316.

At trial, Petitioner presented a defense of mis-identification and his parents provided alibi testimony. Petitioner's mental health was not relevant to either

defense and would not have absolved him from guilt. Defense counsel's failure to present a conflicting and/or contradictory defense at trial does not constitute deficient performance. The decision not to introduce evidence of Petitioner's mental health constitutes a reasonable strategic decision made after thorough investigation. *Strickland*, 466 U.S. at 690-91. Petitioner is not entitled to relief under this ground.

**Claim 3**

Under claim 3, Petitioner alleges that the trial court erred in denying his motion for new trial due to the lack of qualifications on the part of the Creole/English interpreter. (DE#1:8). Petitioner raised this issue on direct appeal. This claim was exhausted and must be reviewed on its merits. However, for the following reasons, it is without merit.

It is well established Florida law that a trial court shall grant a new trial if "[t]he court erred in the decision of any matter of law arising during the course of the trial" and the "substantial rights of the defendant were prejudiced thereby." Fla. R. Crim. P. 3.600(b)(6). However, Florida courts generally cannot "entertain[ ] a motion for new trial ... absent [a contemporaneous] objection." *State v. Goldwire*, 762 So.2d 996, 998 (Fla. 5th DCA 2000); *accord State v. Brockman*, 827 So.2d 299, 303 (Fla. 1st DCA 2002). The purpose of this "contemporaneous objection rule" is "to give trial judges an opportunity to address objections made by counsel in trial proceedings and correct errors." *State v. Rhoden*, 448 So. 2d 1013, 1016 (Fla. 1984),

*rev'd on other grounds in Cargle v. State*, 770 So. 2d 1151, 1152–54 (Fla. 2000). "The rule prohibits trial counsel from deliberately allowing known errors to go uncorrected as a defense tactic and as a hedge to provide a defendant with a second trial if the first trial decision is adverse to the defendant." *Id.*

Nevertheless, a Florida trial court can consider a claim of trial court error on a motion for a new trial even when no contemporaneous objection was made, if the error was "fundamental." *See Goldwire*, 762 So. 2d at 998. Fundamental errors "go[] to the foundation of the case." *Jackson v. State*, 983 So.2d 562, 568 (Fla. 2008) (quotation omitted). Fundamental error "reach[es] down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." *Goldwire*, 762 So.2d at 998 (quotation omitted).

During Petitioner's trial, defense counsel did not lodge a contemporaneous objection to the sworn translator. Where a party does not object to the interpreter's oath or lack thereof, or to the interpreter's qualifications, any error is not considered fundamental because the error "could have easily been corrected" at that point. *Obando v. State*, 988 So. 2d 87, 88 (Fla. 4th DCA 2008); *see also Fernandez v. State*, 786 So. 2d 38, 41 (Fla. 3d DCA 2001) ("Assuming for present purposes that the interpreter did not take the oath, the oath certainly would have been administered if this had been called to the attention of the trial court."); *Rodriguez v. State*, 664 So. 2d 1077, 1077 (Fla. 3d DCA 1995) (regarding claim interpreter was not sworn

pursuant to section 90.606, "This matter could have been readily cured if timely called to the attention of the trial court.").

As the *Obando* court noted, the trial court bears the responsibility of providing only qualified interpreters for trial proceedings, but those qualifications are guaranteed by an administrative order that "establishes the minimum qualifications necessary for court interpreters." 988 So. 2d at 88.

In this case, the defense arranged for a Creole interpreter to be provided by the court interpreters' office. (T 180-81). The interpreter was sworn before Petitioner's father took the stand. (T 323). The trial court instructed the jury that the law required the court to appoint a qualified interpreter to assist a witness who did not speak English; that the interpreter did not work for either side and was completely neutral; and that the interpreter would repeat only what was said and would not add, omit, or summarize anything. (T 323). The court also instructed that the testimony would be in Creole, and if any juror spoke Creole and had a question about the accuracy of the translation, he or she should bring it to the court's attention immediately. (T 324).

According to defense counsel's argument in support of the motion for new trial, Petitioner's parents said, in retrospect, the interpretation was not accurate. (DE# 11, Ex. 5, Post-Trial Hearing Transcript, 4).  Petitioner's parents could speak English and spoke English at the sentencing hearing, refusing the aid of an

interpreter. (*Id.*:9,11-12). It appears that the parents simply felt more comfortable with a particular interpreter used earlier during their depositions (*Id.*:6). Petitioner's parents apparently also understood the particular Creole dialect the interpreter was speaking, as that interpreter translated each question and answer at trial. Defense counsel admitted at the hearing that he "didn't think it was impossible to understand them." (*Id.*:6). Moreover, if defense counsel did actually have trouble understanding his own witnesses at trial, as he later claimed, he did not voice this at the time, when something could have been done. (*Id.*:4).

Nothing in the record supports the conclusion that the trial court abused its discretion in denying the motion for new trial on the interpreter issue, much less that fundamental error occurred that vitiated the entire trial. Therefore, the rejection of the claim by the Fourth DCA on direct appeal is not contrary to or an unreasonable application of federal constitutional principles. As such, it should not be disturbed here. *See Williams v. Taylor, supra*.

**Claim 4**

Under claim 4, Petitioner alleges ineffective assistance of counsel for failing to call a DNA expert and request a *Frye* hearing to examine the reliability of the DNA procedure employed by police department (DE#1:10). Petitioner asserts it would have been "key for the defense counsel to have an expert analyst testimony to show how important DNA evidence is to the offense charged." (*Id.*).

The test for the admissibility of evidence is relevance. *See* Fla. Stat. § 90.402. Relevant evidence is defined by statute as "evidence tending to prove or disprove a material fact." Fla. Stat. § 90.401. "Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence." Fla. Stat. § 90.403. As such, "the prerequisite to admissibility is relevancy." *Dorsett v. State*, 944 So. 2d 1207, 1212 (Fla. 3d DCA 2006). In Florida, to determine whether evidence is relevant, the court looks to the elements of the crime charged to determine whether the evidence tends to prove or disprove a material fact. *Guerrero v. State*, 125 So. 3d 811, 814 (Fla. 4th DCA 2013) (citation omitted).

In this case, testimony from a DNA analyst would not have been relevant. The state did not introduce any DNA evidence. L.S. testified that that Petitioner forced her to put a condom on him. The man who raped her used, and presumably left the scene with, the condom. The victim was not examined at the SATC. Any request by defense counsel to call a DNA expert would have been rejected by the court for lack of relevance. Counsel is not ineffective for failing to raise non-meritorious issues. *Chandler*, 240 F.3d at 917. Petitioner is not entitled to relief on this ground.

Finally, this court has considered all of Petitioner's claims for relief, and arguments in support. *See Dupree v. Warden*, 715 F.3d 1295 (11th Cir. 2013)(*citing Clisby v. Jones*, 960 F.2d 925 (11th Cir. 1992)). For all of his claims, Petitioner has

failed to demonstrate how the state courts' denial of the claims, to the extent they were considered on the merits in the state forum, were contrary to, or the product of an unreasonable application of, clearly established federal law. To the extent they were not considered in the state forum, as discussed in this Report, none of the claims individually, nor the claims cumulatively warrant relief. Thus, to the extent a precise argument, subsumed within any of the foregoing grounds for relief, was not specifically addressed here or in the state forum, all arguments and claims were considered and found to be devoid of merit, even if not discussed in detail here.

## VI.  Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. *See Chavez v. Sec'y, Fla. Dep't of Corr's,* 647 F.3d 1057, 1060 (11th Cir. 2011). To determine whether an evidentiary hearing is needed, the question is whether the alleged facts, when taken as true, are not refuted by the record and may entitle a petitioner to relief. *Schriro v. Landrigan,* 550 U.S. 465, 474 (2007); *Jones v. Sec'y, Fla. Dep't of Corr's*, 834 F.3d 1299, 1318-19 (11th Cir. 2016), *cert. den'd*, 137 S.Ct. 2245 (2017). The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [petitioner's] claim[s] without further factual development," *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003).

## VII.  Certificate of Appealability

A prisoner seeking to appeal a district court's final order denying his or her petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA"). See 28 U.S.C. § 2253(c)(1); *Harbison v. Bell,* 556 U.S. 180 (2009). This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(2). Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel,* 529 U.S. 473, 484 (2000). However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Upon consideration of the record, this court should deny a certificate of appealability. Notwithstanding, if petitioner does not agree, Petitioner may bring this argument to the attention of the district judge in objections.

## VIII. <u>Conclusion</u>

Based upon the foregoing, it is recommended that:

1.     the federal habeas petition be DENIED;

2.     a certificate of appealability be DENIED; and,

3.      the case CLOSED.

Objections to this report may be filed with the district judge within fourteen days of receipt of a copy of the report. Failure to file timely objections shall bar petitioner from a *de novo* determination by the district judge of an issue covered in this report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district judge, except upon grounds of plain error or manifest injustice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *RTC v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988).

SIGNED this 9th day of April, 2019.

_____
UNITED STATES MAGISTRATE JUDGE

cc:     Rodney Michel, *Pro Se*
        DC# L44825
        Martin Correctional Institution
        Inmate Mail/Parcels
        1150 SW Allapattah Road
        Indiantown, FL 34956

        Georgina Jimenez-Orosa
        Attorney General Office
        1515 N Flagler Drive
        Suite 900
        West Palm Beach, FL 33401-3432
        561-837-5000
        Fax: 837-5099
        Email: CrimAppWPB@MyFloridaLegal.com